## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGELICA JUNIOUS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-CV-3681 |
| | ) | |
| SGT. W. BAKER #3159, | ) | Judge Edmond E. Chang |
| R/O C. CHENGARY #16269, | ) | |
| R/LT PURCELL #758, | ) | Magistrate Judge Maria Valdez |
| OFFICER NEALON #18420, | ) | |
| OFFICER WALZ #18563, | ) | |
| OFFICER RAHN #17086, | ) | |
| OFFICER GLAZIERS, | ) | |
| COOK COUNTY SHERIFF TOM DART, | ) | |
| And COOK COUNTY, ILLINOIS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants, | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' *YOUNGER* MOTION

### I.   SUMMARY OF ARGUMENT

Defendants' *Younger* motion is not motivated to protect the parallel criminal case of McKinnie because this civil case has never encroached upon the criminal case. Instead of seeking a stay in this year-old case, twice the Cook County State's Attorney's Office (CCSAO) filed Answers and Affirmative Defenses on behalf of their clients wherein Defendants denied having knowledge or information about McKinnie entering Plaintiff's cell and/or raping her. (Dkt. 21, ¶¶17-18; Dkt. 52, ¶¶17-18) Denying the rape happened might be beneficial for the Civil Actions Bureau (CAB) of the CCSAO to fend off a multi-million-dollar lawsuit, but its actual clients lack information to make that argument consistent with Rule 11.

So, CCSAO claims that its *Younger* motion was triggered by Plaintiff's Second Amended Complaint (SAC). Perhaps it was, but not for CCSAO's articulated concerns, as the SAC does not affect the criminal case <u>at all</u>.

Written discovery tendered on August 10, 2023 has revealed the existence of <u>systemic</u> policy and practice failures at Cook County Jail, which created the conditions that enabled McKinnie to rape Plaintiff. That same recently produced evidence is the basis for Plaintiff's SAC. While the SAC's allegations create "bad facts" for CCSAO's defense of the civil case, those facts do not encroach upon, much less threaten, the criminal case.

CCSAO has manufactured conclusory -- and contradictory[1] -- assertions about encroachment of the criminal case as a pretext to stay the civil case in its entirety, which prejudices Plaintiff's ability to preserve evidence to prove her case. Fear of elected officials from public scrutiny or possible embarrassment for their failings in protecting female detainees from rape <u>again</u> (*See* Exhibit 5, ¶¶33-34) is no basis for *Younger* abstention. The motion should therefore be denied <u>with prejudice</u>. Also, because the CCSAO has not been candid in its representations to this Court, it is time to go further up the chain of command to get candid and complete answers about the genesis of this motion, including its suspicious timing and the outrageously contradictory positions taken in its prosecution, which undermine the public's confidence in the CCSAO.

---

[1] After being ordered by Judge Chang to supplement its *Younger* motion to address CCSAO's conflicting positions about whether the rape did or did not happen, CCSAO has flip-flopped multiple times on the issue. (Dkt. 104, 112, 113, 115, 116) CCSAO's position is likely sanctionable given how its actual clients -- Baker, Chengary, Purcell, Walz, Rahn and Sheriff Tom Dart -- have professed to have no knowledge about the rape, one way or another. (Dkt. 21, ¶¶17-18; Dkt. 52, ¶¶17-18) Given how its prosecuting McKinnie for a rape that none of its existing clients genuinely dispute happened, the CCSAO has absolutely no basis to be debating whether the rape happened. What's more, its foot-dragging on what its position is ("do we want to contest whether she raped or not?" – Dkt. 115, 116) certainly is no basis for a *Younger* stay of proceedings or further delaying the prosecution of this year-old case.

## II.    BACKGROUND

### A. Why There Was Never a Prior *Younger* Stay Motion.

On December 30, 2021, McKinnie raped Plaintiff.  Six months later, on May 13, 2022, the CCSAO initiated criminal proceedings against McKinnie in *People of the State of Illinois v. McKinnie*. (Exhibit 1)   The criminal case was initiated on an express decision by the CCSAO that probable cause existed to believe that McKinnie raped Plaintiff, including DNA evidence. ASA Dominique Marshall is prosecuting the criminal case against McKinnie. (*Id*.)

On July 15, 2022, <u>after</u> CCSAO commenced the criminal case, Plaintiff filed this civil rights lawsuit, which has been pending for over a year with discovery ongoing. (Exhibit 2) On September 16, 2022 and February 10, 2023, the CCSAO filed Answers and Affirmative Defenses on behalf of several Individual Defendants wherein they admitted knowing that McKinnie and Plaintiff were inside Isolation Unit Cells 3151 and 3149, respectively, but "lack[ed] knowledge or information sufficient to form a belief about" whether McKinnie entered Plaintiff's cell or sexually assaulted her. (Group Exhibit 3, Dkt. 21, ¶¶17-18; Dkt. 52, ¶¶17-18) Those judicial admissions are binding against Defendants Chengary, Purcell, Baker, Walz, Rahn and Cook County Sheriff Tom Dart. (*Id*.)

That course of action posed no ethical concern for CCSAO in the criminal <u>or</u> civil cases, given what everyone has always known -- and which has **not** changed -- since the inception of the civil case.  None of the Defendants have ever claimed to know -- one way or another -- whether McKinnie raped Plaintiff and could not genuinely contest the act itself consistent with Rule 11. Continued pursuit of the civil case would not compromise the criminal case because: (1) McKinnie is not a party to the civil case; and (2) none of the Individual Defendants are parties in the criminal

case, foreclosing the exposure of any party to a Fifth Amendment "trap" if they chose to invoke the Fifth Amendment privilege while testifying in the civil proceeding.

Further, in the civil case, it has always been Plaintiff's burden to prove not just that she was raped, but that the rape was the result of: (1) the Defendants' failure to protect Plaintiff; (2) a dangerous condition created by Defendants; and/or (3) Defendants' willful and wanton conduct.

Plaintiff's civil case has been and always will be about the conduct of the Defendants. McKinnie is merely an instrumentality, whose role as an instrumentality has never been genuinely disputed by the Individual Defendants. In short, CCSAO never had a reason to seek a *Younger* stay and still has none.

### B. The Initial Written Fact Discovery.

In January/February 2023, the parties exchanged written discovery, yielding production by CCSAO of the Sheriff's Police criminal investigation. That discovery was not designated confidential and/or produced subject to the protective order in this case. The investigation was thorough and comprehensive, including: (1) written and recorded statements of multiple witnesses, including Plaintiff and McKinnie; (2) still photographs; and (3) the collection of DNA evidence. Plaintiff unequivocally accused McKinnie of rape. McKinnie did not deny sexual contact with Plaintiff, but gave conflicting accounts, from it was consensual sex to claiming that Plaintiff raped McKinnie. Still, no Defendant in the civil case claimed to have any knowledge about the rape. (Group Exhibit 3, Dkt. 21, ¶¶17-18; Dkt. 52, ¶¶17-18)

### C. The August 10, 2023 4:02 a.m. "Document Dump."

Plaintiff's deposition was confirmed for August 10, 2023. At 4:02 a.m. that same morning, CCSAO did a 2,500 page "document dump." Included in that dump was a May 11, 2023

investigatory report authored by Sheriff's Office of Professional Review (OPR). (Exhibit 4)[2]  No explanation has ever been given for the two-month delay in its production to Plaintiff.

Unlike the underlying criminal investigation, the OPR's focus of inquiry was whether <u>jail personnel</u> individually or collectively violated internal policies or procedures.  The investigation was initiated by Cook County Jail Executive Director Roxane Boutte as a precursor for potential disciplinary action <u>against</u> jail employees Jessica Rahn, Corrine Chengary, Jacquetta Nealon and Marlena Jentz.  The inquiry focused on whether they caused or contributed to the circumstances that enabled McKinnie to rape Plaintiff for which they might be held professionally accountable. Whether these individuals -- or others -- violated jail policies has no bearing on McKinnie's guilt or innocence in the criminal case.  An OPR Investigator took audio recorded statements from Rahn, Chengary, Nealon. As to Jentz, she was never interviewed and her disciplinary case was held in "abeyance" when she abruptly resigned in the wake of the imminent OPR inquiry. (Exhibit 4)

Several defendants -- Baker, Purcell and Walz -- were identified as witnesses and gave statements. The OPR's inquiry raised <u>entirely different questions</u> not posed in the criminal investigation, including: (1) why would detainees of the opposite sex be housed in isolation unit cells that were connected by anteroom doors?; (2) was there a jail policy that permitted detainees of the opposite sex to be housed in adjoining cells in such a manner?; (3) what, if any, knowledge did jail employees have about opposite sex adjoining cell assignments?; (4) did any of the individual officers see anything unusual that they failed to report?; (5) were jail policies violated and, if so, by whom?; (6) were officers actually checking and securing "all" isolation cell doors per express jail policy?  Those matters are clearly probative of the material issues in this civil rights

---

[2]CCSAO was not concerned that public disclosure of its contents would compromise McKinnie's criminal prosecution, as CCSAO produced the OPR report without designating it "confidential" pursuant to the protective order entered in this case.

litigation, *i.e.*, was there a state-created danger, failure to protect and/or willful and wanton conduct? But they have no probative value to whether McKinnie raped Plaintiff, which is why OPR did not inquire about the rape act itself. And which is precisely why CCSAO did not identify these facts, in their <u>context</u>, when filing its *Younger* motion due to a "pivot" in the "investigation."

Another key inquiry was whether Jentz created a policy or practice to permit detainees of the opposite sex to be housed in adjoined Isolation Unit cells at Cermak Hospital. If so, that policy, in conjunction with officers' admitted practice of not checking locks of anteroom doors to adjoining cells housing male and female detainees, created a condition that Plaintiff's SAC refers to as the "Rape Trap." Recharacterizing existing evidence is not "new evidence."

With the exception of Jentz, each of the existing and proposed new Defendants have given inconsistent, incomplete or demonstrably false accounts of some aspect concerning the circumstances leading up to the rape (but not the rape itself) and/or jail policy, creating irreparable conflicts of interest that would preclude their continued joint representation of <u>any of the current or future Defendants</u> by attorneys within the CCSAO.

Those conflicts of interest were not fully disclosed by CCSAO until after this Court ordered supplemental briefing (Dkt. 106 – "a conflicts inquiry is warranted") and Plaintiff's brief. (Dkt. 110, ¶¶2-4) As recently as September 5, 2023, CCSAO still fails to clearly advise the Court or counsel *which* Defendants for whom CCSAO intends to secure outside counsel and *when* it can be expected to be done. (Dkt. 115, 116)

**D. Plaintiff's August 10, 2023 Video Deposition and Baker Deposition Cancellation.**

The CCSAO took Plaintiff's deposition without expressing any concern (before <u>or</u> after) that doing so would compromise the underlying criminal case. CCSAO was represented by ASA's Lee and O'Connor who, at the time, were jointly representing all of the Defendants except for

Defendant Nealon. The deposition lasted approximately three (3) hours and focused almost entirely on the details of Plaintiff's rape. On August 11, 2023, a mere 20 minutes before Defendant Baker's confirmed deposition was to start, CCSAO abruptly cancelled the deposition without explanation. Three days later, "Conflicts Unit" ASA Larios assumed representation of Baker.

### E. Plaintiff's Proposed Second Amended Complaint.

On August 14, 2023, Plaintiff sought leave to file Plaintiff's SAC. (Exhibit 5) The SAC raises new factual allegations from both publicly available sources and information related in the OPR report, but all of those allegations bear on underline systemic policy and practice failures created and perpetuated by Sheriff Dart's Department. The publicly available sources show how, historically, Sheriff Dart has been indifferent to threats to the safety and security of women inside physical facilities he is charged with securing, whether it be in courthouse holding cells or the jail itself. Women at risk included lawyers, medical staff, corrections officers and pre-trial detainees. (Exhibit 5, ¶¶19-35, 49-79)

Historically, the situation has been so bad that Cook County Board President Toni Preckwinkle publicly admonished Sheriff Dart and his senior management staff for failing to implement greater security safeguards. President Preckwinkle's comments were made shortly after the County Board paid a $3.25M settlement to a female pre-trial detainee who was gang-raped in a Markham Courthouse holding cell, without ever having to file suit. (*Id*. at ¶¶34-35) The Markham rape settlement happened in the midst of the Cook County Jail "masturbation attack" *Howard* class action lawsuit filed by female sheriff's deputies, including Defendant Jacquetta Nealon. The County settled that case for $14M, again, to President Preckwinkle's public outrage. (*Id*.).

As for the OPR report, it is equally probative of the systemic policy and practice failures relevant to this civil case as it shows how, ultimately, Sheriff Dart disciplined only Defendant Jacquetta Nealon,[3] despite ample evidence that multiple jail personnel: (1) likely gave inaccurate or misleading statements about whether the anteroom doors to Rooms 3149 and 3151 (occupied by Plaintiff and McKinnie, respectively) were actually secured; (2) admitted to routinely not checking the anteroom doors between the cells of Plaintiff and McKinnie; and (3) gave conflicting accounts about whether it was jail policy/practice to house male and female detainees together.

Some jail personnel claimed that it was "standing practice" to house men and women together, which is contradicted by Defendants Baker and Purcell, who expressed surprise (or in Baker's case "alarm") that Plaintiff and McKinnie were housed together. (Exhibit 2) The jail's explanation for allowing men and women to be housed together in adjoining cells was a statement offered by Jail Superintendent Leonard Rocco, who told OPR investigators that it was a "standing practice" implemented by former Assistant Executive Director Jentz. But OPR failed to interview Jentz because she "retired" in February 2022, when an investigation was obviously imminent. (*Id.*)

These facts clearly suggest systemic failure to protect women, which is relevant to prove Plaintiff's claims. That there was a systemic failure by multiple officers -- but resulted in selective disciplinary action solely against Defendant Nealon -- strongly suggests an attempt by Sheriff Dart to hide the systemic nature of the failure to protect female detainees. It also suggests that Jentz and Nealon, while definitely culpable, are being presented as the persons solely responsible when others are equally culpable, increasing exposure for Cook County. This "fresh perspective" of the evidence affects the civil case without encroaching on McKinnie's criminal case.

---

[3] An interesting choice given how Jacquetta Nealon was one of several hundred female jail guards who sued Sheriff Dart as part of the *Howard* class action, accusing Sheriff Dart of failing to prevent male detainees from subjecting women to "masturbation attacks." (Exhibit 5, Dkt. 98-2, ¶¶25-30)

**F. CCSAO's Subpoena for the Deposition of Steven McKinnie.**

On the afternoon of August 18, 2023, before filing its *Younger* motion, CCSAO issued a subpoena for the deposition of McKinnie, addressed to him care of Cook County Jail. (Exhibit 6) It had become obvious that CCSAO was inexplicably changing its litigation stance, implying that Plaintiff was not raped, despite CCSAO's ongoing criminal prosecution. Plaintiff issued a subpoena for ASA Dominique Marshall for the limited purpose of having her confirm there has been probable cause to commence and continue the prosecution, which would negate CCSAO's seemingly contrary inference.[4] CCSAO then filed its *Younger* motion wherein it feigned "shock" by ASA Marshall's deposition subpoena, ignoring how CCSAO triggered that course of action after implying he had not raped Plaintiff. (Dkt. 104, p. 4 -- "whether Steven McKinnie sexually assaulted or raped Plaintiff remains unresolved.")

CCSAO cannot credibly take this position given how all of its clients have denied any knowledge about the rape and how CCSAO is prosecuting McKinnie for rape. And CCSAO's implication that it is Plaintiff who is injecting that issue into the litigation by seeking McKinnie's deposition is simply untrue. (*Id*.) CCSAO's omission of the McKinnie deposition subpoena from its original *Younger* motion was not accidental and clearly done to falsely portray Plaintiff as unilaterally trying to inject McKinnie into the civil case, which is demonstrably false.

**G. The CCSAO's Conflicts of Interest.**

The recent chain of events revealed that CCSAO has at least two (2) categories of conflicts of interest. First, a positional conflict. On one hand, CCSAO's position is that there is probable cause to commence and continue the rape prosecution. On the other hand, when trying to fend off

---

[4] If CCSAO will stipulate to the existence of probable cause to commence and continue McKinnie's criminal prosecution, then it is Plaintiff's position that any need for depositions for ASA Marshall and McKinnie is moot because whether the rape happened would be uncontested for purposes of the civil litigation.

multi-million-dollar civil liability, CCSAO has implicitly denied the rape happened by: (1) interrogating Plaintiff about the rape in explicit detail at her deposition; (2) seeking McKinnie's deposition, intending to inquire about the rape; and (3) pursuing this *Younger* motion, arguing, *inter alia*, "the parties cannot proceed with the assumption[5] that Plaintiff was in fact sexually assaulted or raped." (Dkt. 104, p.4).

CCSAO cannot have it both ways. But especially not when its own clients have admitted they have no knowledge, one way or another, about the rape and where, as here, it is prosecuting McKinnie for rape in a criminal matter that pre-dates this civil action and was pending for 16 months before CCSAO filed this *Younger* motion.

Second, CCSAO has a <u>representational</u> conflict.[6] ASA's Lee and O'Connor are purporting to represent Defendants Cook County, Dart, Purcell, Chengary, Rahn and Walz. They previously represented Baker until they abruptly dumped him and Conflicts Counsel Larios assumed his representation. Witness statements and audio-recorded interviews clearly demonstrate that inherent conflicts of interest exist between current and anticipated defendants, including Chengary, Purcell, Rahn, Walz, Sutton, Boutte, Jentz and Dart. It is impossible for CCSAO not to have realized this earlier given the contents of the OPR Report and witness statements. Its lack of candor on this topic until <u>after</u> being confronted by the Court and Plaintiff (*See* Dkt. 106 – "a conflicts inquiry is warranted," and Dkt. 110, ¶¶2-4 – "factual allegations in the [SAC] also reveal representational conflicts that would preclude the CCSAO from continued joint representation"), has impeded the orderly progress of this litigation, including multiple orders by this Court to

---

[5] CCSAO is mistaken. It is not an "assumption." Given Defendants' admitted lack of knowledge about the rape, Defendants have no evidence to rebut Plaintiff's testimony about her rape. Of course, CCSAO could choose to take the deposition of <u>non-party McKinnie</u>, which, as discussed *infra*, does <u>not</u> encroach upon the criminal case.
[6] CCSAO has since admitted the existence of representational conflicts. But tellingly has failed to give the Court or Plaintiff any specifics about which defendants will be represented by which outside attorneys unaffiliated with the CCSAO, injecting more delay into these already delayed proceedings. (Dkt. 112, p. 2)

supplement CCSAO's briefing on the topic. Each supplement injecting more confusion and contradiction than its predecessor.

**H. Defendants' Doubly Contradictory Supplemental Briefing.**

Judge Chang ordered CCSAO to supplement its *Younger* motion to address the positional conflict concerning the rape. (Dkt. 106) ASA Larios (initially) obeyed the order, stating no positional conflict exists because: (a) Baker didn't witness the rape; (b) there is no video footage of the incident; and (c) the rape is not dispositive of Plaintiff's claims.[7] (Dkt. 113, ¶¶7-8)

ASA Lee chose to ignore Judge Chang's question. Instead, he claimed, without specifying *how*, "issues relating to the underlying criminal incident have moved to the foreground" (Dkt. 112, p.2) and "it now appears that the parties must examine what, if any, role Plaintiff and McKinnie played in McKinnie's access to Plaintiff, which is irreparably [sic] intertwined with McKinnie's criminal prosecution." (*Id.*, p. 3)[8] Instead of answering the judge's question, ASA Lee chose to regurgitate the same boilerplate conclusions and labels about interference with the criminal case as support for his *Younger* motion, but backed down on his implicit suggestion that Plaintiff was not raped. But in doing so, ASA Lee directly contradicted his earlier assertions raised in the original motion. (Dkt. 114 – "that is not at all what the Defendants said in the initial stay motion.")

On September 5, 2023, Judge Chang ordered ASAs Lee and Larios to supplement again, to actually answer the judge's question, giving them three (3) options -- tell the court they: (1) are contesting the rape; (2) are not contesting the rape; or (3) "have not yet decided whether to concede or contest whether the rape happened." (Dkt. 114)

---

[7] ASA Larios is correct about this last part, which is why the civil case does not encroach on the criminal case.
[8] ASA Lee also erroneously claims the Second Amended Complaint does not allege how McKinnie got into Plaintiff's cell. Counsel is directed to Paragraphs 108, 110, 123-136 which plead facts and inferences clearly establishing that the anteroom door was unlocked due to his clients' systemic practice of not checking and securing anteroom doors.

Unsurprisingly, ASA Lee chose "haven't decided." (Dkt. 115) That choice ignores how each of the existing Defendants -- Chengary, Purcell, Baker, Walz, Rahn and Cook County Sheriff Tom Dart -- have already denied knowledge of the rape in pleadings ASA Lee previously filed on their behalf, making it impossible for them to contest that issue in the future in a manner consistent with their Rule 11 obligations. Then ASA Lee punted the problem to new, as-of-yet unidentified future counsel, who would be coming into the case without specifying *when* we can expect that to happen. (Dkt. 115) ASA Larios flip-flopped, contradicting Baker's earlier assertion about the "three reasons he doesn't know anything about the rape" (Dkt. 114), choosing "haven't decided" (Dkt. 116), ignoring Baker's prior denial of having knowledge about the rape. Now ASA's Larios and Lee are consistent in their positions, while seemingly at war with CCSAO's Criminal Division.

## II.     ARGUMENT

The *Younger* inquiry is a 2-step analysis. First, the Court determines if *Younger* "attaches." *Simpson v. Rowan*, 73 F.3d 134 (7th Cir. 1995). To demonstrate *Younger* attaches, it was the CCSAO's burden to show: (1) ongoing judicial proceedings; (2) the proceedings implicate important state interests; (3) that the state court proceedings offer adequate opportunity for review of constitutional claims; and (4) "no extraordinary circumstances -- like bias or harassment -- auger against abstention." *Rowan*, 73 F.3d at 137-138.

If *Younger* attaches, then the Court considers six discretionary factors to determine if the case should be stayed, including: (1) whether the two actions involved the same subject matter, (2) whether the two actions are brought by the government, (3) the posture of the criminal proceeding, (4) the public interests at stake, (5) the plaintiff's interests and possible prejudice to the plaintiff, and (6) the burden that any particular aspect of the proceedings may impose on the defendants. *Doe v. City of Chicago*, 360 F. Supp.2d 880, 881(N.D. Il. 2005); *Chagolla v. City of Chicago*, 529

F. Supp.2d 941, 946 (N.D. Ill. 2008). In applying these factors, the Court must give serious consideration to whether the request for stay was brought <u>early</u> in the litigation <u>before discovery was taken</u>. *Id*. The motion should be denied because *Younger* does not attach. But even if it did, all of the discretionary factors weigh against abstention here.

### A. *Younger* does not attach.

With respect to the first two *Younger* "attachment" factors, it is undisputed that there is an ongoing criminal prosecution of McKinnie and the government always has an interest in prosecuting rapists. But <u>that is the point</u>. The criminal case has <u>always</u> existed during this civil case and the government has <u>always</u> had an interest to protect it. But CCSAO did not move to stay until 16 months later <u>after</u> Sheriff Dart did a document dump that revealed that his people were pointing fingers at each other, also revealing how systemic failures likely caused Plaintiff's injuries. That is the motivation for this stale and untimely *Younger* motion.

That CCSAO never previously sought a *Younger* stay is conclusive proof that CCSAO knew that the civil case had no bearing on the criminal case. Cognizant of that fact, CCSAO now weaves a convoluted narrative rich in conclusions that the OPR Report and the SAC somehow changed the circumstances. Tellingly, CCSAO fails to specify <u>how</u>. Its failure to do so is simple: circumstances have not changed.

As discussed above, the OPR Report does not address whether the rape happened, focusing solely on whether the Defendants – individually or collectively – failed to follow policies and procedures, creating the conditions that enabled McKinnie to rape Plaintiff. Those are the same circumstances that existed on July 15, 2022, September 16, 2022 and February 10, 2023, respectively, when this lawsuit was commenced and when CCSAO filed Answers and Affirmative Defenses to earlier complaints without moving for a *Younger* stay. Whether one or more of the

Defendants left the cell unlocked or created the insane idea of housing men and women together adds no probative value to the criminal case's inquiry: did McKinnie rape Plaintiff?

Despite CCSAO's contrary assertions, there is no risk of inconsistent "factual rulings" between the criminal and civil cases. CCSAO has the burden of proving McKinnie guilty beyond a reasonable doubt, while in the civil case, it is Plaintiff who bears the much lower preponderance of the evidence standard, meaning she must show it is more likely than not that she was raped, in addition to proving other elements that will go unaddressed in the criminal case. Which is why O.J. Simpson could be "not guilty" of committing the murders of Nicole Brown-Simpson and Ronald Goldman, Jr., but be liable to the Estate of Goldman, Jr. for a multi-million-dollar wrongful death judgment. The difference here that precludes abstention? McKinnie is not a party in the civil proceeding, precluding concerns that his invocation of the Fifth Amendment in the civil proceeding would hurt his interests.

The third *Younger* attachment factor also negates attachment. The criminal case does not offer Plaintiff an adequate forum to hear her constitutional claims. The criminal case focuses solely on whether McKinnie committed the rape beyond a reasonable doubt. The criminal court judge will not entertain evidence or argument about whether jail staff were objectively reasonable in their conduct toward Plaintiff or whether Plaintiff's constitutional rights were violated. CCSAO's conclusory contentions to the contrary are entirely lacking in merit.

Finally, the fourth attachment factor -- "no extraordinary circumstances" -- also negates attachment for the same reasons explained in *Simpson v. Rowan.* In *Simpson*, the plaintiff was suing police officers for a wrongful murder conviction where part of the $6.1M compensatory damages sought in plaintiff's federal civil rights lawsuit was attributable to the continued appellate prosecution of plaintiff's underlying criminal case. 73 F.3d at 134. As the Seventh Circuit noted,

"were [plaintiff] to prevail on his damages action before the conclusion of the state supreme court proceedings, the resulting federal judgment might undermine the supreme court's consideration of [plaintiff's] <u>constitutional defenses to his criminal conviction</u>." 73 F.3d at 138. Here, Plaintiff is not a party in the criminal case, and positions that she takes in the civil case concerning whether her constitutional rights were violated -- *i.e.*, were the defendants objectively reasonable and/or created the condition? -- will have no impact whatsoever about the sole focus in the criminal case: did McKinnie rape Plaintiff? Because CCSAO has failed to show *Younger* attaches, the Court should inquire no further and deny the motion.

**B. The *Younger* Discretionary Factors Are Not Satisfied Here.**

Assuming arguendo that *Younger* does attach here, the discretionary factors weigh entirely against entering a stay of these civil proceedings at this late juncture.

With respect to Factor 1, the criminal and state cases do not involve the same subject-matter and there is no "extensive overlap" between the two proceedings. *Salcedo v. City of Chicago*, 2010 U.S. Dist. LEXIS 67991 at *6 (N.D. Ill. July 8, 2010). Unlike the common fact pattern where corrupt cops are <u>parties</u> facing simultaneous criminal and civil rights proceedings for the same underlying misconduct, here Plaintiff is not a party in the criminal case. The sole focus of the criminal case is whether the CCSAO can prove beyond a reasonable doubt that McKinnie raped Plaintiff. But as Baker conceded (Dkt. 113), any defense to the civil rights claims is wholly dependent on whether the Defendants (non-parties in the criminal case) were objectively reasonable and/or did not create the conditions that harmed Plaintiff. In short, the civil case is about what happened between two different factions who are not parties in the criminal case about legal issues separate and distinct from the single binary question: did McKinnie rape Plaintiff. These circumstances weigh against abstention.

With respect to Factor 2, the two actions are <u>not</u> brought by the government. The criminal case was brought by CCSAO, while Plaintiff brought the civil case. That the CCSAO is representing individual defendants in the civil case does not convert CCSAO into a party, much less, the party that brought the civil case, making its current role as <u>counsel</u> wholly irrelevant for *Younger*. The rationale for this factor -- avoiding risk that civil discovery might be unfairly used against a criminal defendant -- poses no issue here for two (2) reasons.

First, McKinnie is not a party in the civil case. If CCSAO continues to insist on taking McKinnie's deposition, that will create no "Fifth Amendment" trap that would prejudice McKinnie in the civil <u>or</u> criminal litigation. If (when) McKinnie invokes his Fifth Amendment privilege, he does so without prejudice because, as a non-party to the civil case, McKinnie has no interest in the civil case that would be prejudiced by the resulting adverse inference. *Harris v. City of Chicago*, 266 F.3d 750, 753 (7th Cir. 2001). And, as a matter of law, McKinnie's Fifth Amendment invocation in <u>Plaintiff's civil case</u> would be inadmissible in <u>McKinnie's criminal case</u>. *Chagolla*, 529 F. Supp.2d at 945 (noting Fifth Amendment concerns triggering *Younger* involves *parties* to the civil litigation who are involved in the concurrent state-court prosecution).[9]

Second, that CCSAO is tasked with prosecuting McKinnie and defending the Defendants in this civil case does not change the equation. The CAB has a fiduciary duty to its individual defendant clients. Because there is always a risk of potential conflict -- for example, if an individual defendant told their ASA lawyers in confidence that they hit or struck a jail detainee -- CAB cannot share that information with the Criminal Division. CCSAO presumably has a conflicts wall

---

[9] It is for this reason that CCSAO's reliance on *Doe v. City of Chicago*, 360 F. Supp.2d 880, 881 (N.D. Ill. 2005), *Horton v. Pobjecky*, 2013 U.S. Dist. LEXIS 207948, *10 (N.D. Ill. Sept. 13, 2013) and *Barnhardt v. Buckner*, 2013 U.S. Dist. LEXIS 112022 at *2 (N.D. Ill. 2013) is misplaced. Unlike here, each of those civil cases involved situations where a *Younger* stay was granted because either the plaintiff <u>or</u> defendant was a criminal defendant in a concurrent parallel state law criminal prosecution. Here, McKinnie is not a party and when he presumably invokes his Fifth Amendment privilege, as CAB concedes he is likely to do in a civil deposition, it will not jeopardize his criminal prosecution.

between its criminal and civil divisions. That wall precludes the sort of information sharing or encroachment that this *Younger* factor seeks to prevent. The best evidence that such a wall is fully intact here is how CCSAO's civil and criminal lawyers appear to continue to be take inconsistent positions about whether McKinnie is or isn't a rapist despite Judge Chang giving them two chances to clear-up that confusion in supplemental briefing. The record before this Court demonstrates that the risk of information sharing between CAB and the Criminal Division is non-existent.

Factor 3 -- the posture of the criminal proceeding -- weighs against a stay. CCSAO claims this factor is satisfied because civil discovery will "interfere with key witnesses that provided statements to the Cook County Sheriff's Police Department," referring to the underlying criminal investigation. (Dkt. 104) That statement is demonstrably false. The criminal investigation concluded on May 12, 2022, triggering the May 13, 2022 commencement of the criminal case against McKinnie. (Exhibit 1) The unspecified "key witnesses" cited by CCSAO are Baker, Chengary, Nealon, Purcell, Walz and Rahn -- all of whom denied having any knowledge of the rape to Sheriff's Police. (Exhibit 4), which explains why they similarly denied knowledge when answering Plaintiff's Complaints. (Exhibit 3, Dkt. 21, ¶¶17-18; Dkt. 52, ¶¶17-18)

There can be no interference with witnesses who have no knowledge of the underlying incident. As for their OPR statements, those materials are entirely incapable of affecting McKinnie's criminal prosecution because, as explained, those questions all involved issues about the nature of, and compliance with, jail policy/practices by the Defendants. Curiously, CCSAO does not specify the nature of the "physical evidence" that will be beneficial to the civil suit if the case was stayed. Assuming CCSAO was not regurgitating canned boilerplate, the parties have all that they need for the civil case: including DNA rape kit results that established sexual relations

17

between Plaintiff and McKinnie and still photographs of the cells. All that is left is depositions of the Defendants. Thus, this factor weighs against a stay.

Factor 4 -- public interest in the criminal prosecution -- weighs against a stay. No doubt, the public always has an interest in prosecuting a rapist. But CCSAO's motivation for this motion is not about protecting a rape prosecution. If it was, then CCSAO would: (1) have sought a stay last year, putting the brakes on any discovery; (2) not taken Plaintiff's deposition inquiring about a rape: (3) not have sought McKinnie's deposition; and (4) not have publicly displayed contradictory CCSAO positions about whether McKinnie is a rapist or not. This motion is solely motivated by a desire to avoid answering the SAC and admitting the systemic policy and practice failures at Cook County Jail to spare Defendant Dart further public humiliation for his failures.

Finally, Factors 5 and 6 -- respective prejudice to the Plaintiff and Defendants -- weigh against a stay. A complete stay of proceedings is drastic relief, robbing Plaintiff of the power to take depositions to preserve evidence to be admissible later at trial, to prevent resulting prejudice when witnesses die, vanish or forget. That is a very real concern where here, the OPR Report was withheld from Plaintiff for two months, revealing how other individuals were far more involved than previously known.

Plaintiff's earlier attempts to take the depositions of Defendants Baker and Nealon were stalled due to repeated assertions by the CCSAO that they were "unavailable" due to unspecified leave. An independent inquiry, of course, revealed that Defendant Dart has been actively attempting to terminate Defendant Nealon during the entirety of this litigation. And just when CCSAO appeared willing to finally produce Baker, they switched lawyers and stalled discovery by pursuing this dubious motion. Plaintiff is the victim of a physically, emotionally and mentally devastating criminal offense perpetrated against her in the jail. The Defendants' litigation tactics

18

are doubly traumatizing her. And the Defendants are clearly trying to prevent her from preserving testimony that can be used in this civil case to vindicate her rights.

Defendants cite no prejudice that they would suffer if a stay is denied. (Dkt. 104, p. 10) Instead, they claim a stay will prevent "contradictory testimony or assumption of Steven McKinnie's guilt to [sic] a crime." (*Id*.) That canned response does not hold up in the context of the known facts. None of the Defendants claim knowledge about the underlying rape, making it highly unlikely that they would be called in the criminal case, and, if so, impossible to contradict themselves on the one relevant issue in that case. Nor is anyone making an "assumption" about McKinnie's guilt in the civil case. Plaintiff has given sworn testimony about her first-hand account of an incident that Defendants cannot dispute and CCSAO has asserted, in fact, has happened. Well, at least the Criminal Division of the CCSAO has. For these reasons, the *Younger* factors all weigh in favor of denying CCSAO's motion to stay the criminal proceedings.

### III. CONCLUSION

The manner in which CCSAO has handled the defense of this litigation is beneath the bench and bar of the Northern District of Illinois. It has resulted in a breath-taking situation where the CCSAO is *seemingly* calling into question its own criminal prosecution of Plaintiff's rapist. Its motivation for doing so is obvious. CCSAO's failure to timely seek a *Younger* stay at the outset of the litigation triggered a need for it to create new circumstances to justify the belated filing of a *Younger* motion now. In short, CCSAO has enjoyed a *de facto* stay created by its lack of candor and outrageous liberties taken in its descriptions of the OPR Report and Plaintiff's SAC, and their non-existent impact on the criminal case. CCSAO has subjected Plaintiff to prejudicial delay and forced the Court and Plaintiff to expend significant time, energy and resources addressing non-

issues. Worse still, the Court and Plaintiff still have no straight answers about the positional and representational conflicts raised in the briefing of CCSAO's *Younger* motion.

Plaintiff respectfully suggests that the Court convene a public hearing where CCSAO **senior staff** be present to finally and completely answer all of these questions. But in the interim, the record is sufficiently developed to conclude that this *Younger* motion should be denied with prejudice, as continued pursuit of civil discovery will not encroach upon the criminal case.

Respectfully submitted,

PLAINTIFF ANGELICA JUNIOUS

By: *Devlin Joseph Schoop*_____
Devlin Joseph Schoop
One of Plaintiff's Attorneys

Melvin L. Brooks
Devlin Joseph Schoop
Colin Q. Commito
**THE COCHRAN FIRM CHICAGO**
140 South Dearborn Street
Suite 1020
Chicago, Illinois 60603
(312) 262-2880
mbrooks@cochranfirm.com
dschoop@henderson-parks.com
ccommito@cochranfirm.com

Brian Orozco
**GREGORY E. KULIS & ASSOCIATES, LTD.**
134 N. LaSalle Street, Suite 444
Chicago, IL 60602
(312) 580-1830
borozco@kulislawltd.com

Cierra Norris
**THE LAW OFFICE OF C.N. NORRIS, LLC.**
900 W. Jackson Blvd., Suite 6E
Chicago, IL 60607
P:312.625.6129
F: 312.374.6441
cierra@cnorrislaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 6, 2023, the foregoing **Plaintiff's Response Brief in Opposition to Defendants'** *Younger* **Motion** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record.

Antonio C. Lee
James O'Conner
Miguel Larios
**Cook County State's Attorney's Office**
50 W. Washington St.
Chicago, IL 60602
(312) 603-5439
antonio.lee@cookcountyil.gov
james.oconnor@cookcountyil.gov
miguel.larios@cookcountyil.gov

*/s/ Devlin Joseph Schoop*